Filed 12/10/24  P. v. Bailey CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TEAUNTE BAILEY,<br><br>    Defendant and Appellant. | A168887<br><br><br>(Alameda County<br>Super. Ct. No. 21CR003247A) |

Teaunte Bailey appeals after he was convicted of first degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a); count one),[1] second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c); count two), evading a peace officer with willful disregard for safety (Veh. Code, § 2800.2, subd. (a); count three); first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a); count four); and residential burglary (Pen. Code, § 459; count five).  The trial court sentenced Bailey to 25 years to life in state prison for the murder count and concurrent determinate terms for the remaining counts.  Bailey argues that the trial court's jury instruction allowed the jury to convict him of first degree felony murder on a legally inadequate theory.  He also contends that the trial court committed two sentencing errors.  We agree (and the

---

[1]  Undesignated statutory references are to the Penal Code.

1

People concede) that the matter must be remanded for resentencing.  We otherwise affirm.

## BACKGROUND

### A.

On March 9, 2021, at around 6:45 in the morning, 75-year-old Pak Chung Ho left his condominium, on Jayne Avenue in Oakland, for a walk.  He walked with a cane and was carrying his wallet and iPhone.  Another person out walking on Jayne Avenue saw a yellow truck speed past Ho, stop briefly for the passenger and driver to switch seats, and then make a U-turn and drive back down Jayne Avenue towards Ho.  The truck stopped near Ho.  Then the witness saw a man get out of the truck, walk to Ho, and lunge for his cane.  The witness was afraid, ran away, and did not see the remainder of what occurred between Ho and the man.  After a few minutes, the witness called 911, returned to the scene, and found Ho lying on the ground.  He was nonresponsive and bleeding from a wound on the right side of his head.

Surveillance video obtained from a nearby house identified the truck.  The video further showed that, as the truck pulled up next to Ho, the truck's passenger held his arm out the window, holding what appeared to be a firearm.  The passenger then exited the truck, ripped something from Ho in a tugging motion, and punched Ho on the side of the head, knocking him to the sidewalk.

Ho never regained consciousness and died in the hospital a few days later.  A forensic pathologist testified that Ho's cause of death was excessive bleeding in the brain due to blunt head trauma.  Ho had injuries to both the left and right side of his head, including an abrasion to the right side of his scalp, and hemorrhaging underneath.  Ho's cardiovascular disease contributed to the bleeding in his brain, but the pathologist

2

testified that "[h]is main issue was the head injury and the swelling."

The pathologist testified that the bruising and laceration on Ho's left cheek were consistent with having been hit by a gun or being punched while wearing glasses (driving the frame into his cheek). The abrasion on the right side of his head was consistent with falling and hitting that side of his head on pavement.

**B.**

After contacting Ho's daughter and logging into his iCloud account, police located Ho's phone around 37th Street and Martin Luther King Jr. Way. Officers found Bailey nearby in a truck matching the description of the truck used in the robbery. Officers tried to stop the truck, but Bailey refused to pull over. After a high-speed chase with police, Bailey lost control of the vehicle and struck a light pole. He abandoned the truck and fled on foot but eventually surrendered to police.

Police found Ho's cell phone in Bailey's pants pocket. In a backpack Bailey had dropped, officers also found Bailey's photo identification, a card bearing Ho's name, and four additional cell phones. Bailey was wearing an ankle monitor and had a small cut on his right knuckle—consistent with a strike mark. When Bailey was interviewed by police, he admitted that he exited the truck's passenger door and interacted with Ho.

At the time of the robbery, Bailey was subject to monitoring via a GPS ankle monitor. The ankle monitor reported Bailey's physical location to his parole agent once every minute. This data showed that, at 6:30 a.m. on March 9, 2021, Bailey was near an Arco station on Shattuck Avenue.[2] At 6:48 a.m. and again at

---

[2] This was confirmed by surveillance video showing the same truck, Britton, and Bailey at the Arco station. Bailey was driving.

6:50 a.m., Bailey's electronic monitor showed he was on Jayne Avenue—in precisely the same location where Ho was later found.

When Bailey's codefendant (on counts one and two) Demetrius Britton was arrested—three days after the robbery—Britton had one of Ho's credit cards in his wallet. Police also found a replica pellet gun nearby.

## C.

Counts four and five involved the events of February 19, 2021. That evening, 76-year-old Zhi Cheng Shi heard noise in the backyard of his ground-floor apartment. When Shi investigated, he found that his sliding screen door had been opened. Shi opened his sliding glass door and Bailey forced the sliding glass door open and entered Shi's apartment—hitting Shi's shoulder as he did so. Shi fell to the ground, but then got up and ran outside and yelled for help. Shi heard Bailey saying, " 'money, money' " as Bailey walked around the apartment. Bailey took Shi's phone, eight to 10 Chinese New Year red envelopes, and a sealed delivery package.

## D.

The jury convicted Bailey on all counts. As to count one, the jury found that the information's special felony-murder allegation— that Bailey was the actual killer and a participant in the perpetration of a robbery that resulted in Ho's death (§ 189, subd. (e)(1))—was true. With respect to count two, the jury found true great bodily injury allegations—that Bailey personally inflicted great bodily injury on Ho that caused him to become comatose due to brain injury and that Bailey personally inflicted great bodily injury on a senior over the age of 70 (§ 12022.7, subds. (b), (c)). The jury found Bailey's codefendant (Britton) not guilty of murder and was unable to reach a verdict (and a

4

mistrial was declared) on the additional robbery charge against him.

The trial court sentenced Bailey to a prison term of 25 years to life on count one. The trial court also imposed, concurrent to count one, an aggregate determinate sentence of 23 years—composed of a three-year term on count two, a five-year term for each of the two great bodily injury enhancements (§ 12022.7, subds. (b), (c)), a two-year term on count three, a four-year term on count four, and a four-year term for count five.[3]

## DISCUSSION

### A.

Bailey contends that the trial court's instruction on first degree felony murder—by giving the jury an incorrect definition—allowed the jury to convict him without finding he was the actual killer. After reviewing the instructions independently (*People v. Cole* (2004) 33 Cal.4th 1158, 1210), we agree that the trial court's instruction was erroneous but conclude the error was harmless.

### 1.

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "The malice required by section 187 may be express or implied. It is express when there is a manifest intent to kill. (*People v. Gentile* (2020) 10 Cal.5th 830, 844 [272 Cal. Rptr. 3d 814, 477 P.3d 539] (*Gentile*),

---

[3] According to the abstract of judgment and minute order, Bailey received a two-year term on count five. But the trial court orally pronounced a four-year term on count five. When the oral pronouncement of judgment conflicts with the minute order or abstract of judgment, the trial court's oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) The abstract of judgment must be modified to correct the clerical error.

superseded by statute [on other grounds] as stated in *People v. Hola* (2022) 77 Cal.App.5th 362, 370 [292 Cal. Rptr. 3d 476].)  It is implied if someone kills with ' "no considerable provocation … or when the circumstances attending the killing show an abandoned and malignant heart." ' (*Gentile*, at p. 844.)  Implied malice has both physical and mental components.  [Citation.]  The physical component is satisfied by the performance of an act, the natural consequences of which are dangerous to human life.  The mental component is established when the defendant knows his or her conduct endangers another person's life yet acts with a conscious disregard for life." (*People v. Vang* (2022) 82 Cal.App.5th 64, 81 (*Vang*).)

"In California, the felony-murder rule provides an exception to the malice requirement for murder.  [Citation.]  The rule imputes the requisite malice to those who commit a homicide during the perpetration of a felony inherently dangerous to human life.  [Citation.]  The requisite mental state is simply the specific intent to commit the underlying felony.  (*People v. Cavitt* (2004) 33 Cal.4th 187, 197 [14 Cal. Rptr. 3d 281, 91 P.3d 222].)  The purpose of the rule is to deter criminals from killing by holding them strictly responsible for deaths that occur during the perpetration (or attempted perpetration) of an inherently dangerous felony, regardless of whether the killing was done by the perpetrator or an accomplice, and regardless of whether the killing was intentional, negligent, or accidental." (*Vang, supra*, 82 Cal.App.5th at p. 81.)  First degree felony murder is a killing committed during a specified felony, such as rape, burglary, or robbery.  (§ 189, subd. (a); *People v. Solis* (2020) 46 Cal.App.5th 762, 774.)  Under the felony-murder rule, both the actual killer and an accomplice can be convicted of murder.  (*People v. Cruz* (2020) 46 Cal.App.5th 740, 752.)

Several years before Bailey's trial, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended the felony-murder rule by

6

adding section 189, subdivision (e), which provides that a defendant can be convicted of felony murder only if they are the "actual killer," an aider and abettor who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subds. (e)(1)-(3); Stats. 2018, ch. 1015, § 3; *People v. Harden* (2022) 81 Cal.App.5th 45, 50.) The legislature also amended section 188, subdivision (a)(3), to require that all principals to murder must act with express or implied malice to be convicted of that crime, "[e]*xcept* as stated in subdivision (e) of Section 189." (§ 188, subd. (a)(3), italics added; Stats. 2018, ch. 1015, § 2; *Harden*, at p. 51.)

"In criminal cases, a trial court has a sua sponte duty to instruct on the general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*Vang, supra*, 82 Cal.App.5th at p. 83.) "When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)

**2.**

At trial, the prosecution's theory was that both Britton and Bailey were guilty of felony murder—Bailey as the actual killer and Britton as an accomplice in the robbery.

With respect to Bailey, the trial court instructed the jury on malice murder and felony murder. On the latter theory, the court used a former version of the standard felony-murder instruction (former CALCRIM No. 540A (Sept. 2019 rev.)), which told the jury: "To prove that a defendant is guilty of first degree murder under [a felony-murder] theory, the People must prove that: [¶] 1. The defendant committed or attempted to commit robbery; [¶] 2. The defendant intended to commit robbery; [¶] AND [¶] 3. While committing or attempting to commit [r]obbery, *the defendant*

7

*caused the death of another person.* [¶] A person who was the actual killer may be guilty of felony murder even if the killing was unintentional, accidental, or negligent."  (Italics added.)

Approximately three months before Bailey's trial began, the Judicial Council of California revised CALCRIM No. 540A to replace the third (italicized) element above with the following: "3. While committing [or attempting to commit] _____ <insert felony or felonies from . . . § 189>, the defendant *personally committed* (an/the) act[s] that *directly* caused the death of another person."  (CALCRIM No. 540A, as revised March 2023, italics added and bold omitted.)

Neither Bailey's counsel nor the prosecutor objected to the instruction the trial court gave.  Nor did they advise the trial court that the instruction had been recently revised.[4]  In fact, defense counsel proposed the language that the trial court gave.

**3.**

Bailey maintains that, under the current felony-murder rule, as amended by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), he could be liable for felony murder only if he was proven to be the "actual killer" and that the former version of CALCRIM 540A erroneously instructed the jury on the meaning of that term.[5]  We agree that, because the prosecutor was trying

---

[4] Although Bailey did not object to the instruction below, we do not treat his instructional error argument as forfeited. (See § 1259; *Vang, supra,* 82 Cal.App.5th at p. 80, fn. 4.)

[5] Bailey is wrong as a general legal matter that he had to be the actual killer to be guilty of felony murder.  (See § 189, subds. (e)(2), (3).)  However, that was only theory on which Bailey was tried for felony murder.  Furthermore, to the extent Bailey suggests that the instruction was erroneous because it did not require that the actual killer act with intent to kill, he is incorrect.  "As amended by Senate Bill No. 1437, the text of section 189 provides no additional or heightened mental state requirement for the 'actual killer' prosecuted under a felony-

8

Bailey on solely an actual killer theory, the trial court erred by instructing the jury that it had to find Bailey "caused" Ho's death. The instruction should have required the jury to find Bailey personally committed the act that directly killed Ho. (See *Vang, supra,* 82 Cal.App.5th at pp. 69, 91.) But the error was harmless.

Bailey relies on recent cases drawing a distinction between causing someone's death and actually killing the person. (*Vang, supra*, 82 Cal.App.5th at pp. 86-88; *People v. Lopez* (2022) 78 Cal.App.5th 1, 4, 18-19 (*Lopez*); *People v. Garcia* (2020) 46 Cal.App.5th 123, 151 (*Garcia*).) "Actual killer" means the person who *personally* committed the homicidal act. (*Vang,* at pp. 86-88; *Lopez,* at p. 4; *Garcia,* at p. 151.) "In other words, the intent [of Senate Bill No. 1437] was to conform California law to the 'agency theory' of felony-murder liability, under which criminal culpability is restricted to deaths directly caused by the defendant or an accomplice, as distinguished from the 'proximate cause' theory of felony murder, under which a defendant is responsible for any death that proximately results from the unlawful activity." (*Vang*, at p. 88.)

In both *Garcia, supra*, 46 Cal.App.5th 123 and *Lopez, supra,* 78 Cal.App.5th 1, it was not clear if the defendant himself directly killed the victim. (*Garcia,* at pp. 134-137, 140-141, 145-146 [defendant either handed co-perpetrator roll of duct tape used to cover victim's mouth (and causing asphyxiation) or taped the victim's mouth himself]; *Lopez*, at pp. 7-10 [defendant admitted being at scene of murder (where his DNA was also found) but claimed he never went into room where another person killed victim].) In *Vang, supra,* 82 Cal.App.5th at page 69, the defendant forced the victim into his car, but she later jumped

murder theory; it requires only that '[t]he person was the actual killer.' (§ 189, subd. (e)(1).)" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 967; accord, § 188, subd. (a)(3).)

out of the moving car of her own volition. In all three cases, the jury had been instructed that, to find the defendant guilty of felony murder, the jury had to conclude that, while committing the felony, the defendant "caused the death of another person." (*Vang,* at p. 80 & fn. 3; *Lopez,* at p. 16; cf. *Garcia,* at pp. 149-150 [CALCRIM No. 730].) The reviewing courts found these instructions inadequate. (*Vang,* at p. 91; *Garcia,* at pp. 153-155; see *Lopez,* at pp. 10, 16-17, 20 [deciding the instruction meant, in former § 1170.95 (renumbered § 1172.6 by Stats. 2022, ch. 58, § 10, eff. June 30, 2022) context, that the record was inconclusive as to whether the defendant was actual killer and thereby ineligible for resentencing].) Reversal was required because CALCRIM No. 540A "created the possibility the jury convicted defendant of felony murder . . . without finding him to have been the actual killer." (*Lopez,* at p. 20; accord, *Garcia,* at pp. 155-157.)

Here, the trial court instructed the jury with the same language found problematic in all these cases. This instruction did not necessarily require the jury to find Bailey personally killed Ho. Instead, the instructions permitted the jury to convict Bailey if it concluded Ho's death occurred during the commission of robbery, and Bailey caused Ho's death. The People provide no persuasive reason to reach a result contrary to that reached in *Vang, supra,* 82 Cal.App.5th at page 91—that the jury instructions were inadequate. However, the People have carried their burden to show that the error is harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18; *Vang,* at p. 91.)

First, Bailey cannot establish prejudice because the jury found the personal infliction of great bodily injury enhancement allegations (§ 12022.7, subds. (b), (c)) true. (See *People v. Wright* (2006) 40 Cal.4th 81, 98 [there can be no prejudice if " 'factual question posed by the omitted instruction was necessarily

10

resolved adversely to the defendant under other, properly given instructions' "]; *People v. Harden, supra,* 81 Cal.App.5th at pp. 55 & fn. 9, 58 [distinguishing *Lopez* and concluding trial court correctly denied resentencing petition at prima facie hearing because jury necessarily found defendant personally killed victim].)  With respect to the section 12022.7, subdivision (b), allegation, the jury was instructed: "[T]he People must prove that defendant Bailey *personally inflicted* great bodily injury on Pak Ho during the commission of the crime, and the defendant's acts caused Pak Ho to become comatose due to brain injury."  (Italics added.)  It was this brain injury that the pathologist testified caused Ho's death.

Second, on the record before us, we fail to see how the jury could have found that Bailey was not the actual killer but proximately caused Ho's death.  In *Vang*, *Lopez*, and *Garcia*, there was at least a plausible scenario in which the defendant was found guilty of murder even though he was not the actual killer.  In contrast, Ho died of head trauma after he was punched.  The evidence was overwhelming that it was Bailey, not Britton, who exited the truck and punched Ho.  The error was harmless.

**B.**

Next, we accept the People's concession that remand is necessary because the trial court committed two sentencing errors.

First, the trial court erred, in connection with count two, by imposing two five-year great bodily injury enhancements (§ 12022.7, subds. (b), (c)).  (*Id.*, subd. (h) ["[t]he court shall impose the additional terms of imprisonment under either subdivision (a), (b), (c), or (d), but may not impose more than one of those terms for the same offense"]; *People v. Ausbie* (2004) 123 Cal.App.4th 855, 864, disapproved on another ground by *People v. Santana* (2013) 56 Cal.4th 999, 1011, fn. 6.)  Accordingly, one of

11

the five-year enhancements must be stricken.  (See § 12022.7, subd. (h).)

Second, Bailey and the People are correct that section 654 barred the trial court from imposing unstayed sentences on both counts four and five (first degree robbery and residential burglary) because it is undisputed that both counts were committed during a single course of conduct and pursuant to a single objective—taking items from Shi's apartment.  (See § 654, subd. (a) [an act that is "punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act . . . be punished under more than one provision"]; *People v. Hester* (2000) 22 Cal.4th 290, 294; *People v. Cardenas* (2015) 239 Cal.App.4th 220, 229.) Bailey's failure to assert an objection below did not forfeit this error.  (See *Hester,* at p. 295.)

Effective 2022, the Legislature amended section 654 by removing the requirement that a defendant be punished under the provision providing for the longest term of imprisonment and granting the trial court discretion to impose punishment under either applicable provision.  (§ 654, subd. (a) ["[a]n act . . . that is punishable in different ways by different provisions of law may be punished under *either* of such provisions," italics added]; Stats. 2021, ch. 441, § 1; *People v. Mani* (2022) 74 Cal.App.5th 343, 379.)  Accordingly, we must remand for resentencing pursuant to section 654.  (See *Mani,* at p. 381.)

### DISPOSITION

The matter is remanded to the trial court so that (1) the trial court may strike one of the section 12022.7 enhancements to count two, as mandated by section 12022.7, subdivision (h); (2) the court may exercise its discretion to stay execution of sentence on either count four or count five, pursuant to section 654, subdivision (a); and (3) for correction of the clerical error in the abstract of judgment (noted in footnote three) with respect to

12

count five.  The trial court is further directed to prepare an amended abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


                                                            BURNS, J.

WE CONCUR:


SIMONS, ACTING P. J.
CHOU, J.

*People v. Bailey (A168887)*